**Ruth McDonald GAULT, Petitioner,**

v.

**PUBLIC SCHOOL EMPLOYES'
RETIREMENT BOARD,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1998.

Decided Nov. 25, 1998.

Thomas W. Scott, Harrisburg, for petitioner.

Lenann T. Engler, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and LEADBETTER, JJ.

SMITH, Judge.

■ Ruth McDonald Gault petitions for review of an order of the Public School Employes' Retirement Board (Board) that sustained exceptions to a proposed report filed by a hearing examiner and denied her request to purchase retirement credit for a maternity leave of absence. Gault questions whether the Board erred in interpreting Section 8304(b)(7) of the Public School Employees' Retirement Code (Retirement Code), 24 Pa.C.S. § 8304(b)(7), which authorizes women to purchase retirement service credit for time spent on forced maternity leave, as imposing a one-year deadline for making application. In the alternative, if the statute does create a one-year period for purchase of credit for maternity leave, Gault questions whether this constitutes sex discrimination and violation of the principle of equal protection of the laws, contrary to the guarantee in Article I, Section 28 of the Constitution of Pennsylvania.

I

Gault, a public school teacher with the Cornwall–Lebanon School District (School

District), became pregnant during the 1972–1973 school year. At the time the School District's policy required pregnant teachers to take a maternity leave of absence. Gault took such leave for the second semester. The Retirement Code was amended by the Act of August 5, 1991, P.L. 182, No.1991–23 (Act 23), to include new forms of nonschool service for which members of Public School Employes' Retirement System of Pennsylvania (PSERS) might purchase credit for retirement purposes. Among those was service for time spent on a maternity leave of absence required by the employer before May 17, 1975, 24 Pa.C.S. § 8304(b)(7).[1]

The relevant provisions of Section 8304, *as amended*, relating to creditable nonschool service, are as follows:

> (a) **Eligibility.**—An active member ... shall be eligible to receive Class T–C service credit for creditable nonschool service as set forth in subsection (b) ... provided that such service is certified by the previous employer and the manner of payment of the amount due is agreed upon by the member, the employer, and the board.
>
> . . . . .
>
> (b) **Limitations on nonschool service.**—Creditable nonschool service credit shall be limited to:
>
> . . . .
>
> (7) Service for the period of time spent on maternity leave of absence required by the employer, which creditable service shall not exceed two years per leave and shall be applicable only to a maternity leave which was mandatory prior to May 17, 1975. The purchase of this service

shall begin within one year of the employee's eligibility to purchase this creditable service.

◼ PSERS, in an internal policy statement developed to provide guidance to its employees, interpreted Act 23 as requiring any teacher who was an active member at the time of the effective date of the provisions, November 2, 1991, to apply to make such a purchase within one year of that date, i.e., by November 3, 1992. Gault was an active member in that period, but she did not apply then.[2] Later, after learning that coworkers had purchased retirement credit for maternity leave, Gault applied to purchase credit on March 20, 1996. PSERS denied her request, and Gault appealed. Following a hearing the hearing examiner concluded that PSERS had misinterpreted the provisions of Section 8304 as creating a deadline of November 3, 1992 for purchase of forced maternity leave credit, and she issued a recommendation that the Board grant Gault's application.[3] The Board rejected the hearing examiner's analysis of Section 8304 and denied Gault's request. This Court's review of a decision of the Board is limited to determining whether the necessary findings are supported by substantial evidence in the record and whether there was an error of law or a constitutional violation. *Hopkins v. Public School Employes' Retirement Board*, 674 A.2d 1197 (Pa.Cmwlth.1996).

II

A

Gault begins by asserting that the background for this case is found in a series of

---

1. The Pennsylvania Human Relations Commission adopted regulations relating to pregnancy and childbirth effective May 17, 1975, including 16 Pa.Code § 41.103, which requires that policies regarding job benefits and job security shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities and provides that policies requiring a pregnant employee to leave automatically at a specified time during pregnancy or to remain away after she has recovered from disability are in violation of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951 – 963.

2. Gault has not challenged on appeal adverse rulings by the hearing examiner and the Board

on her claim that the Board should be estopped from denying her application, based on her allegations that she made a telephone inquiry with PSERS at the proper time but was given incorrect information that the opportunity to purchase did not apply to her.

3. The hearing examiner further concluded that if Section 8304(b)(7) were interpreted as creating a one-year deadline for applications, Gault had not met the heavy burden of establishing that the provision unconstitutionally discriminates against women as a class by denying equal protection of the law without serving a legitimate state interest.

decisions addressing forced maternity leave and resignation for teachers, beginning with *Cerra v. East Stroudsburg Area School Dist.*, 450 Pa. 207, 299 A.2d 277 (1973). Without deciding constitutional issues raised, the Supreme Court concluded in *Cerra* that a school board's regulation requiring any pregnant employee to resign not later than the end of the fifth month of pregnancy constituted "sex discrimination pure and simple" in violation of Section 955(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 955(a). *Cerra,* 450 Pa. at 213, 299 A.2d at 280. Gault maintains that the clear intention of the legislature in enacting Act 23 was to permit women who had been discriminated against in past decades to recoup a portion of their loss by allowing them to purchase, at their own expense, retirement service credit for years when they would have been working but for the discriminatory practice of forced leave for the periods before and after the births of their children.

Gault acknowledges that the Board is the agency charged with the execution and application of the Retirement Code and that its interpretation should not be overturned unless it is clearly erroneous. *Laurito v. Public School Employes' Retirement Board,* 146 Pa.Cmwlth. 514, 606 A.2d 609 (Pa.Cmwlth. 1992).[4] She notes also, however, that this Court has stated that as a general rule, pension statutes are to be liberally construed in favor of the pensioner but that the Court may consider the consequences of a particular construction when the statute is susceptible to more than one interpretation. *Panko v. Public School Employees' Retirement System,* 89 Pa.Cmwlth. 419, 492 A.2d 805 (1985).

Gault stresses that the November 3, 1992 deadline is not expressly stated in Act 23 but results from the Board's interpretation of the requirement of Section 8304(b)(7) that the "purchase shall begin within one year of the employee's eligibility to purchase" in conjunction with the effective date of the provision, November 2, 1991. She argues that the Board erred in concluding that all active employees meeting the other requirements became "eligible" to purchase on the effective date. Rather, Gault contends that the meaning of eligibility must be determined with reference to Section 8304(a), which relates to eligibility. Gault argues that subsection (a) means that an employee becomes eligible to purchase credit for any of the forms of creditable nonschool service enumerated in subsection (b) only after such service is certified by the previous employer and the amount due and the manner of payment are agreed upon by the member, the former employer and the Board. Therefore, eligibility did not arise by operation of law on November 2, 1991; instead, it is the end result of a case-by-case analysis that begins with the application but requires verification of the information supplied, a determination of cost of the purchase and the member's agreement as to cost and terms of purchase.[5] Because no "purchase" can precede verification and agreement, Gault contends that "application" is not synonymous with "purchase."

Gault notes further that other provisions of Act 23, employing different language, do expressly provide for the kind of deadline that the Board finds in Section 8304(b)(7). Act 23 also added provisions relating to "activated military service" for members of reserve units called up to active duty. Subsection (b.1) was added to Section 8302, *as amended,* 24 Pa.C.S. § 8302, relating to credited school

**4.** Gault argues that this deference should be constrained in this case because the internal policy statement that PSERS applied did not have the status and effect of a regulation duly promulgated by PSERS. This argument, however, ignores the fact that an agency may establish binding policy through rulemaking procedures or through adjudications that establish binding precedent. *Pennsylvania Human Relations Commission v. Norristown Area School Dist.,* 473 Pa. 334, 374 A.2d 671 (1977). Here, the Board's interpretation of Section 8304(b)(7) in its decision constitutes its construction of the statute, regard-

less of whether that interpretation was derived from the internal policy statement or from some other source.

**5.** Similarly, Section 8303(c) of the Retirement Code, 24 Pa.C.S. § 8303(c), provides that "[e]very active member ... may purchase credit and receive eligibility points as a member of Class T–C for previous school service or creditable nonschool service upon written agreement by the member and the board as to the manner of payment of the amount due for such credit...."

service; it provides options to a member regarding contributions during such service. Section 8302(b.1)(2) requires a member desiring to exercise an option to continue making payments during the period of leave to file such an election in writing with the Board "within 60 days after the commencement of his leave of absence for activated military service or within 60 days of the effective date of this subsection, whichever shall later occur." When the legislature intended to impose a finite deadline, it did so in clear and specific language.

Gault contends there is no basis for concluding that the legislature intended that purchase of credit for forced maternity leave be treated differently from purchases of similar creditable nonschool service, such as general military service or out-of-state school service. These purchases may be made at any time before retirement, when a member ceases to be an "active member" and becomes an "annuitant." *See* Section 8102 of the Retirement Code, *as amended*, 24 Pa. C.S. § 8102, relating to definitions. Gault asserts that such freedom for a member to choose when to purchase has no actuarial effect because for this as for other forms of creditable nonschool service, the member pays both his or her own share and the employer's share of contributions plus interest, which preserves the actuarial soundness of the fund.

Finally, Gault argues that Section 8324(f) of the Retirement Code, 24 Pa.C.S. § 8324(f), relating to purchase of creditable maternity leave and also added by Act 23, supports her position regarding "eligibility." Section 8324(f) provides the method of calculating contributions for creditable service pursuant to Section 8304(b)(7), based upon applying the member's basic contribution rate plus the normal contribution rate at the time of the member's return to school service to the total compensation received during the first year of subsequent school service. This product is multiplied by the number of years and fractional part of a year of creditable service being purchased, together with statutory interest during all periods of school or State service to the date of purchase. Some other subsections of Section 8324 specify that upon certification of the amount due, payment may be made in a lump sum within 90 days or in the case of an active member may be amortized with salary deductions or checks in agreed upon amounts.

Gault argues that the lack of specific time frame in Section 8324(f) indicates, together with the language of the second sentence of Section 8304(b)(7), that no time frame was intended. She notes that Section 8325 of the Retirement Code, 24 Pa.C.S. § 8325, relating to incomplete payments, provides for the situation where a member chooses to purchase credit shortly before retiring and does not pay the full amount of the purchase; in such a case the present value of the benefit otherwise payable is reduced by the balance due, including interest.

B

The Board responds that the specific language employed by the legislature in 1991 in creating Section 8304(b)(7) should control over the general language of Section 8304(a), which dates from the original enactment of the Retirement Code in 1975. As support it cites Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1933. The Board attacks Gault's interpretation of "eligibility" under Section 8304, asserting that the statement in subsection (a) that an active member is eligible to receive credit for nonschool service "as set forth in subsection (b)" requires reference to any subsection (b) requirements before examining the "conditions subsequent" of subsection (a).

The Board notes the hearing examiner's reliance upon *Day v. Pennsylvania School Employes' Retirement System*, 682 A.2d 398 (Pa.Cmwlth.1996), for the proposition that certification precedes eligibility. There a teacher sought credit for a forced resignation due to maternity while she was teaching in another state, and this Court upheld the denial of her request to purchase, noting that she did not produce certification by the previous employer as required by Section 8304(a) and that the other state's retirement system had not recognized the time for retirement purposes and credited it as part of a refund, as required by the Board's policy statement on maternity leave credit. The

Board asserts that *Day* is distinguishable because the one-year provision under Section 8304(b)(7) was not involved, and the issue was not the timing but rather the complete lack of certification.

The Board also contends that Gault's interpretation renders some portions of the Retirement Code meaningless. It states that the form for requesting to purchase maternity leave of absence includes certification by the previous employer on its face. Further, once the request is received, PSERS calculates the amount and sends the member a Statement of Amount Due, on which the member must indicate the payment plan he or she desires, with a 90–day period for submitting a lump sum. If the member chooses payroll deductions, PSERS notifies the employer of when such deductions must begin. The Board states that if a member made a lump-sum payment, it would be meaningless for the one-year period to begin at that point of purchase. Also, permitting the one-year period to run from the time of a member's choosing would negate the 90–day period to begin making payments prescribed by Section 8324(d), which creates a time-frame for payments for all nonschool creditable service other than military service.

### III

The Court concludes that the interpretation of Section 8304 by the hearing examiner and Gault is correct. First, the Court agrees that the clear intent of the legislature in Act 23 was to provide some remedy for past practices that the Supreme Court had already characterized as "sex discrimination pure and simple." This intent gives added force in this case to the general principle that pension statutes are to be liberally construed in favor of the pensioner. Further, the Court disagrees that the plain language of Act 23 mandates the Board's view. The Board has not sufficiently distinguished *Day* so as to avoid the conclusion that "eligibility to purchase" within the meaning of Section 8304(b)(7) does not arise until after certifica-

tion of the maternity leave information and agreement as to terms.

The one-year period for commencing purchase after eligibility to purchase may readily be interpreted as an effort by the legislature to make it as easy as possible for individual victims of past discrimination to take advantage of the opportunity to purchase, as contrasted with the Board's narrow view of a one-time window that opened and then permanently closed.[6] The Court also agrees that the legislature's use of language elsewhere in Act 23 specifically tying a requirement to "the effective date of this subsection" implies strongly that the legislature did not intend such a meaning in Section 8304(b)(7). *Compare Seliga v. State Employes' Retirement System*, 682 A.2d 77, 79 (Pa.Cmwlth.1996) (where a section of a statute contains a particular provision, the omission of that provision in the enactment of a similar section is significant to show a different intention). The Board's contention that this interpretation of the Retirement Code is somehow violated if a member in a position to do so makes a lump-sum purchase is not persuasive.

In sum, the Court concludes that the Board's interpretation of the provisions of the Retirement Code relating to purchase of service credit for periods of forced maternity leave of absence was clearly in error. In view of this conclusion, the Court need not address Gault's claim that, if the Board's position is correct, the statute violates the principle of equal protection of the law. Accordingly, the order of the Board is reversed.

### ***ORDER***

AND NOW, this 25th day of November, 1998, the order of the Public School Employes' Retirement Board is reversed, and the Board is ordered to process the application of Ruth McDonald Gault to purchase nonschool retirement service credit for a period of forced maternity leave.

---

**6.** The record indicates that where a member suffered a forced maternity leave before May 17, 1975 and was not an active member at the time of the maternity leave window but later returns to active status, PSERS permits the one-year period to run from the time of return. Joint Ex. A., Testimony of Savannah Howard from previous hearing, N.T. 87—88.

Judge DOYLE dissents.

Judge LEADBETTER concurs in the result only.