Catherine H. HAWES, Petitioner,

v.

**PUBLIC SCHOOL EMPLOYES'
RETIREMENT BOARD,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 2, 2001.
Decided June 18, 2001.

Michelle F. Duggan, Harrisburg, for petitioner.

Lenann T. Engler, Harrisburg, for respondent.

Wendy G. Rothstein, Lansdale, for intervenor, Wallingford–Swarthmore School District.

Before McGINLEY, Judge, SMITH, Judge, JIULIANTE, Senior Judge.

SMITH, Judge.

Catherine H. Hawes petitions for review of a decision of the Public School Employes' Retirement Board (Board) that denied her application for retirement service credit for the 1981–1982 school year because her salary was not paid by the Wallingford–Swarthmore School District (District). Hawes contends that the Board's decision is not supported by substantial evidence and is erroneous as a matter of law. The dispositive question in this case is whether Hawes worked for the District during the period in question or for Educational Placement Services, Inc. (EPS), a now-defunct private corporation that provided the District with certified substitute teachers pursuant to a contract dated September 4, 1979.

I

In February 1981 Hawes applied for a position as a Resource Room Teacher at the District. Thereafter, two District administrators interviewed Hawes for a position as a long-term substitute chemistry teacher to replace a teacher on sabbatical for one year. The District administrators recommended to the District that Hawes be hired as a substitute for the 1981–1982 school year through EPS. Hawes never submitted an employment application to EPS and was never interviewed by a representative of EPS.

Hawes served as a long-term substitute for the District for the 1981–1982 school year. The District provided all of her teaching assignments, and EPS played no role in supervising her work. Hawes' salary was equal to a first year teacher without prior experience. Her paychecks were issued by EPS, which also deducted the appropriate taxes. EPS issued Hawes' W–2 forms, and Hawes identified EPS as her employer on her income tax return. However, the District provided EPS with the funds used to pay Hawes' salary. Fol-

lowing the 1981–1982 school year, the District employed Hawes in a permanent position. The District's Board of Directors formally approved Hawes' hire as a chemistry teacher effective September 1982, and the District thereafter entered into a written contract with Hawes.

On June 11, 1998, Hawes submitted a request to the Public School Employes' Retirement System (PSERS) to purchase retirement credit for the 1981–1982 school year. Hawes listed EPS on her application as the employer for that year. *See* Section 8303(c) of the Public School Employes' Retirement Code (Code), 24 Pa. C.S. § 8303(c).[1] The PSERS Benefit Processing Center denied her request. A hearing was held before the hearing examiner on October 20, 1999.

Relying upon *Golebieski v. Public School Employees Retirement Board,* 161 Pa.Cmwlth. 127, 636 A.2d 268 (1993), the hearing examiner determined that Hawes was not a public school employee during the years in question because she was not paid by the District. The hearing examiner concluded that the factors set forth in *Zimmerman v. Public School Employes' Retirement Board,* 513 Pa. 560, 522 A.2d 43 (1987), for determining when a person is a public school employee rather than an independent contractor were inapplicable. The hearing examiner nevertheless provided an analysis of the *Zimmerman* factors [2] and determined that Hawes was not an employee of the District under *Zimmerman.* The hearing examiner therefore concluded that Hawes was not entitled to District paid contributions for the 1981–1982 school year pursuant to Section 8506(d) of the Code, 24 Pa.C.S. § 8506(d),[3] and was not entitled to purchase retirement credit for that school year pursuant to Section 8303(c). The Board affirmed and adopted the hearing examiner's decision.[4]

1. Section 8303(c) of the Code provides:
   **Purchase of previous creditable service.**—Every active member of the system or a multiple service member who is an active member of the State Employees' Retirement System on or after the effective date of this part may purchase credit and receive eligibility points as a member of Class T–C for previous school service or creditable nonschool service upon written agreement by the member and the board as to the manner of payment of the amount due for credit for such service; except, that any purchase for reinstatement of service credit shall be for all service previously credited.

2. The hearing examiner determined that seven of the ten factors favored Hawes. The factors set forth in *Zimmerman,* 513 Pa. at 563, 522 A.2d at 45, are: "[1.] Control of manner work is to be done; [2.] responsibility for result only; [3.] terms of agreement between the parties; [4.] the nature of the work or occupation; [5.] skill required for performance; [6.] whether one is engaged in a distinct occupation or business; [7.] which party supplied the tools; [8.] whether payment is by the time or by the job; [9.] wheth-

er work is part of the regular business of the employer, and also [10.] the right to terminate the employment at any time." The hearing examiner concluded that factors 1, 2, 4, 5, 6, 7, 9 favored the existence of an employee relationship, whereas factors 3, 8, 10 favored the absence of an employee relationship.

3. Section 8506(d) of the Code provides in part:
   **New employees subject to mandatory membership.**—Upon the assumption of duties of each new school employee whose membership in the system is mandatory, the employer shall no later than 30 days thereafter cause an application for membership, which application shall include ... previous school or State service ... and shall make pickup contributions from the effective date of school employment.

4. The Court's review of a decision of the Board is limited to determining whether the necessary findings are supported by substantial evidence in the record and whether there was an error of law or constitutional violation. *Gault v. Public School Employees' Retirement Board,* 720 A.2d 1090 (Pa.Cmwlth.1998).

## II

Hawes argues that she was an employee of the District during the 1981–1982 school year and contends that the District should have submitted her name as a member of the retirement system for that year and paid the District's share of the contributions for her service. Hawes further contends that because the District failed to pay its share of the contributions for the year of service, the District must now be required to do so. As an initial matter, the Court agrees with the Board that the *Zimmerman* factors are inapplicable to this case. The *Zimmerman* factors are addressed to the narrow issue of whether a claimant is an employee or an independent contractor. *See Zimmerman,* 513 Pa. at 562, 522 A.2d at 44. There is no contention here that Hawes was an independent contractor during the 1981–1982 school year. Hawes was certainly an employee during that period; the dispute concerns who employed her. Specifically, the issue in this case is whether Hawes was engaged in work for any governmental entity.

Section 8102 of the Code, *as amended,* 24 Pa.C.S. § 8102, defines a school employee as: "Any person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular remuneration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis." The section also defines a "governmental entity" as: "Board of school directors, board of public education, intermediate unit board of directors, area vocational-technical board, any governing board of any agency or authority created by them, and the Commonwealth." If Hawes worked for the District during the 1981–1982 school year then she met the definition of a school employee. If Hawes worked for EPS during that period then she did not.

The District filed a notice of intervention on

This Court explained in *Golebieski,* 636 A.2d at 270, that "[i]n common parlance to 'work for' someone is to enter into an employment relationship with that person, in the sense of providing services in exchange for compensation." The Pennsylvania Paper Company in *Golebieski* intermittently employed the claimant from 1940 through 1960. During the period from 1955 until 1960 the Paper Company employed the claimant as the recreational director in charge of its community center. His duties in that position included teaching physical education and health education classes in the community center to students of a local public school district. The Board denied the claimant's request to purchase service credit for that period, and the Court affirmed. Crucial to the Court's decision were the facts that the claimant was paid solely by the Paper Company and that he had significant other duties for the company that were not related to the school district.

Hawes, by contrast, had no duties for EPS; all of her duties were related to the District. She had virtually no contact with EPS, never submitted an employment application to EPS and was not aware of its existence until after she was employed. Although EPS was responsible for issuing Hawes' paycheck, the record and facts found by the Board demonstrate that the District paid Hawes' compensation along with a fee to EPS for its services under the contract between the District and EPS. Paragraph 4 of the contract extension between the District and EPS provided:

> District shall pay EPS for the supplying of long term substitute teachers an amount equal to the base salary of each long term substitute teacher provided by EPS plus an amount equal to 12.70% of the base salary of each long term substi-

July 31, 2000.

tute teacher plus the sum of $50.00 per month, provided however, should EPS' payroll taxes either increase or decrease during the term of this Agreement, EPS may increase or decrease its fee to the District in an amount not more than the increased or decreased costs.

Thus Hawes' compensation originated from the District and was merely transmitted to her through EPS. Furthermore, the Board's findings demonstrate that the District, and not EPS, was responsible for determining the amount of Hawes' compensation. The hearing examiner wrote:

Most telling is that a new collective bargaining agreement was initiated for the 1981–84 school year and since [Hawes] was to have been paid at the entry level Step 1 position, she was told that she would be paid approximately $11,900.00 when she began teaching in September 1981; however, with the adoption of the CBA, the Step 1 pay was $12,615.00. She pointed this discrepancy out to the Superintendent of the District and as a result of that meeting, [Hawes'] pay was increased to reflect an annual pay of $12,615.00.

Hearing examiner's opinion, at p. 20. Hence when Hawes had a dispute about the amount of her compensation she went to the District, not EPS, and the District increased her compensation. The Board's findings reveal absolutely no role played by EPS in Hawes' employment other than

bookkeeping functions and acting as a conduit for her paychecks.[5]

■ The Board also relied upon paragraph 12 of the contract between the District and EPS, which provided:

It is the intention of the parties that the substitutes furnished by EPS shall be the employees of EPS for all purposes, and shall not be employees of the District for any purposes. EPS shall have sole responsibility for all obligations arising out of the employment relationship including withholding and payment of all taxes due on the substitutes' salaries, FICA, Federal, State and local taxes on income and Workmen's Compensation, as well as Unemployment Compensation.

While the intention of the District and EPS may have been for EPS to be the employer of all substitutes, nothing in the Board's findings indicates that EPS actually functioned as Hawes' employer. A school district may not evade its statutorily mandated responsibilities by funneling the compensation that it pays to its teachers through a private entity and entering a contract with that entity which states that it, rather than the district, is the employer of the teachers.[6]

■ The Board's reliance upon various differences between the terms of Hawes' employment during the period in question and that of other teachers employed by the District was also erroneous. These differ-

---

5. The Board also relied upon its prior decision *In re Jane Slater* (Nos.1994–10 & 1994–11, filed March 8, 1996). The Court notes that *Slater* is distinguishable as the private corporation in that case compensated the claimants, provided their benefits including an optional retirement plan, supervised them on a day-to-day basis including establishing the claimants' working hours, conducted the claimants' performance evaluations and provided the claimants with textbooks and working materials.

6. Section 1106 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1106 (duty to employ) provides in part: "The board of school directors in every school district *shall employ* the necessary qualified professional employes, *substitutes* and temporary professional employes to keep the public schools open in their respective districts in compliance with the provisions of this act." (Emphasis added.)

ences relate to the amount of compensation Hawes received in relation to her experience, the benefits that Hawes received, the manner in which her evaluations were conducted and the absence of a resolution by the District's Board of Directors formally hiring her. The fact that Hawes was not employed on terms identical to those of her co-workers does not establish that she did not work for the District. Hawes negotiated with the District for employment, provided services that were determined and supervised by the District and received in exchange for her services compensation in an amount that was established and ultimately paid by the District. None of these things can be said of Hawes' relationship with EPS.

Accordingly, under the facts found by the Board and established by the record Hawes worked for the District during the 1981–1982 school year as that term is used in the common parlance. *Golebieski.* Therefore, the Board erred as a matter of law in concluding that Hawes was not a school employee during the school year, and its order is reversed in that regard. Because the Board erroneously concluded that Hawes was not a school employee during 1981–1982, it never determined whether the District should be required to pay for Hawes' contributions for that year pursuant to Section 8502(g) of the Code[7] or whether Hawes is entitled only to purchase retirement credit under Section 8303(c). The matter therefore is remanded for the Board to address that issue and to enter an appropriate order consistent with this opinion.

---

7. Section 8502(g) of the Code, 24 Pa.C.S. § 8502(g), provides:

**Performance of employer duties.**—In the event the employer fails to comply with the procedures as mandated in section 8506 (relating to duties of employers), the board shall perform such duties and bill the employer who shall pay for the cost of same. In the event the employer is delinquent in payment of contributions in accordance with section 8327 (relating to payments by employers), the board shall notify the Secretary of Education and the State Treasurer of such delinquency.

## ORDER

AND NOW, this 18th day of June, 2001, the order of the Public School Employes' Retirement Board is reversed, and the matter is remanded in accordance with the foregoing opinion.

Jurisdiction is relinquished.