Jean Pinto THORPE, Petitioner

v.

**PUBLIC SCHOOL EMPLOYEES' RETIREMENT BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2005.
Decided July 12, 2005.

11. Because of our disposition of this issue, we need not discuss the "base year argument."

Melina C. McTigue, Montgomeryville, for petitioner.

David W. Speck, Harrisburg, for respondent.

Kristy W. Ziegler, Harrisburg, for amicus curiae, PA Dept. of Education.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge LEADBETTER.

Jean Pinto Thorpe petitions for review of an order of the Public School Employees' Retirement Board denying her requests to receive retirement credit for auxiliary services she performed for nonpublic school students while working for two not-for-profit corporations, the Program of Auxiliary Services for Students (PASS) and Elwyn, Inc.

Thorpe filed two applications with the Public School Employees' Retirement System (PSERS) seeking retirement credit for service with PASS and Elwyn, both of which provided educational services to nonpublic school students within the service area of the Philadelphia Intermediate Unit.[1] Thorpe's applications were denied, and she requested administrative hearings with respect to the denials. On July 9, 2003, Board Hearing Examiner Michael L. Bangs conducted a hearing on the appeals.

By decision dated February 12, 2004, he recommended that both of Thorpe's applications to purchase credit for prior service be denied.

The hearing examiner's pertinent findings of fact, which the Board adopted, included that Thorpe is an active member of PSERS through her present employment as an Upper Merion School District schoolteacher. From 1977 through 1989, Thorpe worked with nonpublic school students as a remedial reading and math teacher and as a curriculum coordinator in the City of Philadelphia (City), and PASS paid Thorpe for providing these services. From 1989 through 1992, Thorpe continued to work as a coordinator,[2] and Elwyn paid Thorpe for this service.[3] Thorpe was never a direct employee of the school district's intermediate unit, and the school district has never made any contribution to PSERS on Thorpe's behalf.

At all relevant times, the intermediate unit supplied auxiliary services to nonpublic school students in order to comply with

1. Section 922.1–A(a) of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 9–972.1(a), *added by* the Act of August 1, 1975, P.L. 180 (commonly known as "Act 89"), sets forth the following legislative finding and declaration of policy:

    The welfare of the Commonwealth requires that the present and future generation of school age children be assured ample opportunity to develop to the fullest, their intellectual capacities. It is the intent of the General Assembly by this enactment to ensure that the intermediate units in the Commonwealth shall furnish on an equal basis auxiliary services to all pupils in the Commonwealth in both public and nonprofit nonpublic schools.

    Section 4.3 of Title 22 of the Pennsylvania Code, 22 Pa.Code § 4.3, defines "intermediate unit" within the context of chapter 4 (relating to "Academic Standards and Assessment") as "[a] regional educational service

agency established under sections 951—974 of the School Code (24 P.S. §§ 9–951–9–974), which provides educational services to participating school districts as part of the public school system of this Commonwealth." Further, section 901–A of the School Code, 24 P.S. § 9–951, *added by* the Act of May 4, 1970, P.L. 311, provides:

    Each school district of the Commonwealth shall be assigned to an intermediate unit, and shall be entitled to the services of an intermediate unit in accordance with a program of services adopted by the intermediate unit board of directors.... Intermediate units shall be part of the public school system of this Commonwealth....

2. The Hearing Examiner incorrectly found that Thorpe was a remedial reading and math teacher during this time period, but that mistake of fact is irrelevant.

3. Apparently, by this time, PASS was defunct.

Act 89.[4] Since 1975, when Act 89 became effective, auxiliary services were supplied through contracts with external vendors, including PASS and Elwyn, but never through school district employees. The only exception is for hearing services, which are not relevant here. The intermediate unit enters into these contracts through a competitive bidding process whereby it seeks requests for proposals from independent contractors, and the intermediate unit can reject bids based on the quality of the submissions. PASS and Elwyn were responsible for the development and delivery of their programs, and they invoiced the school district or the intermediate unit on a monthly basis for their services. They received a monthly payment based on a review of the invoices against the contract amount. The school district did not directly pay the salaries of persons working for PASS or Elwyn. In fact, proposed contracts between PASS and the school district and between Elwyn and an unnamed person, both of which were PSERS exhibits, respectively indicated that PASS was an independent contractor and that Elwyn was the unnamed person's employer.

The school district entered into contracts with PASS and Elwyn to provide auxiliary services to students of nonpublic schools pursuant to Act 89. Employees of PASS and, thereafter, employees of Elwyn hired and supervised Thorpe. Although the intermediate unit kept a personnel file on Thorpe as well as the other teachers working for PASS and Elwyn, PASS and Elwyn had the responsibility to ensure that all of the teachers who worked for

---

4. Act 89 contains the following definition of "auxiliary services":

> "**Auxiliary Services**" means guidance, counseling and testing services; psychological services; visual services as defined in section 923.2–a; services for exceptional children; remedial services; speech and hearing services; services for the improvement of the educationally disadvantaged (such as, but not limited to, the teaching of English as a second language) and such other secular, neutral, nonideological services as are of benefit to all school children and are presently or hereafter provided for public school children of the Commonwealth.

Section 922.1–A(b) of the School Code, 24 P.S. § 9–972.1(b) (emphasis in original).

Act 89 also defines "nonpublic school" as a "nonprofit school, *other than a public school within the Commonwealth of Pennsylvania,* wherein a resident of the Commonwealth may legally fulfill the compulsory school attendance requirements of this act and which meet *the requirements of Title VI of the Civil Rights Act of 1964....*" *Id.* (emphasis added).

Act 89 further provides:

> (c) Program of Auxiliary Services. Students attending nonpublic schools shall be furnished a program of auxiliary services which are provided to public school students in the school district in which their nonpublic school is located. The program of auxiliary services shall be provided by the intermediate unit in which the nonpublic school is located, in accordance with standards of the Secretary of Education. Before an intermediate unit makes any decision that affects the opportunities for children attending nonpublic schools to participate in the auxiliary services provided under this section, the intermediate unit shall consult with such nonpublic schools to determine at a minimum: which general categories of children shall receive services; what services shall be provided; how and where the services shall be provided; and how the services shall be evaluated. Such services shall be provided directly to the nonpublic school students by the intermediate unit in the schools which the students attend, in mobile instructional units located on the grounds of such schools or in any alternative setting mutually agreed upon by the school and the intermediate unit, to the extent permitted by the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

> Such auxiliary services shall be provided directly by the intermediate units....

Section 922.1–A(c) of the School Code, 24 P.S. § 9–972.1(c).

them had the required certifications. Thorpe met with intermediate unit supervisors on a regular basis in order to satisfy the intermediate unit that the contract terms between the intermediate unit and PASS or Elwyn were being fulfilled. Thorpe received all requisite teaching materials from either PASS or Elwyn. PASS and Elwyn set her work hours, evaluated her performance, and offered their employees various benefits, such as sick leave, retirement programs, and health insurance. Thorpe did not receive employer-provided benefits from the school district, and she was not enrolled in PSERS while she worked for PASS and Elwyn. Hearing Examiner's Decision, *In re Account of Thorpe* (Nos. 2002–04, 2003–09, dated February 12, 2004), Findings of Fact Nos. 1–27, slip op. at 1–4.

The hearing examiner also concluded, *inter alia,* that neither PASS nor Elwyn were public schools or governmental entities for purposes of the Public School Employees' Retirement Code (Retirement Code), 24 Pa.C.S. §§ 8101—8535, and its attendant regulations. *See* 22 Pa.Code § 211.2. Therefore, Thorpe was not entitled to purchase credit for her prior service pursuant to the statute. *Id.,* Conclusions of Law Nos. 7 and 11, slip op. at 7, 8. Thorpe filed exceptions to the hearing examiner's order. By order dated June 22,

2004, the Board denied Thorpe's requests to receive retirement credit. In doing so, it explained that it had conducted an independent review of the record and then adopted the findings of fact, conclusions of law, discussion, and recommendation of the hearing examiner as if they were its own. *See In re Appeal of Thorpe* (Nos. 2002–04, 2003–09, dated June 22, 2004), slip op. at 1.

■ On appeal here, Thorpe raises the following questions: (1) whether the Board's decision denying her applications to purchase service credit for the years 1977–78 through 1991–92 is unsupported by substantial record evidence; and (2) whether the Board's decision denying her application to purchase service credit for those same years is an error of law.[5]

We begin by noting:

Section 8303(c) of the Retirement Code[, 24 Pa.C.S. § 8303(c)] provides for the purchase of credit and receipt of eligibility points for "previous school service or creditable nonschool service." Eligibility points are based upon length of service and determine both the vesting of pension rights and the amount of pension to which an employee is entitled.

*Pennsylvania Sch. Bds. Ass'n, Inc. v. Pub. Sch. Employees' Ret. Sys.,* 804 A.2d 737, 742 (Pa.Cmwlth.2002), *aff'd,* 580 Pa. 610, 863 A.2d 432 (2004).[6]

---

**5.** Our scope of review of the Board's order is limited to a determination of whether the Board committed an error of law or whether necessary findings of fact are supported by substantial evidence. *See Golebieski v. Pub. Sch. Employees Ret. Bd.,* 161 Pa.Cmwlth. 127, 636 A.2d 268 (1993).

**6.** Section 8303(c) of the Retirement Code (relating to "Purchase of previous creditable service") specifically provides:

Every active member of the system or a multiple service member who is an active member of the State Employees' Retirement System on or after the effective date

of this part may purchase credit and receive eligibility points:

(1) as a member of Class T–C for previous school service or creditable nonschool service; or

(2) as a member of Class T–D for previous school service, provided the member elects to become a Class T–D member pursuant to section 8305.1 (relating to election to become a Class T–D member);

upon written agreement by the member and the board as to the manner of payment of the amount due for credit for such service; except, that any purchase for reinstatement of service credit shall be for all service previously credited.

Section 8102 of the Retirement Code, 24 Pa.C.S. § 8102, defines "previous school service" as "[s]ervice rendered as a school employee including service in any summer school conducted by a school district of the Commonwealth prior to the member's most recent entrance in the system." Section 8102 defines "school employee" as "[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular remuneration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis." Further, Section 8102 defines "public school" as

[a]ny or all classes or schools within this Commonwealth conducted under the order and superintendence of the Department of Education including, but not limited to: all educational classes of any employer charged with the responsibility of public education within this Commonwealth as well as those classes financed wholly or in part by the Federal Government, State-owned colleges and universities, the Pennsylvania State University, community colleges, area vocational-technical schools, intermediate units, the State Board of Education, Scotland School for Veterans' Children, Thaddeus Stevens State School of Technology, and the Pennsylvania State Oral School for the Deaf.

Section 8102 also defines "governmental entity" as "[b]oard of school directors, board of public education, intermediate unit board of directors, area vocational-technical board, any governing board of any agency or authority created by them, and the Commonwealth." Therefore, "[i]n order to fall within the definition of 'school employee' for the purposes of obtaining retirement credit, a member of PSERS must show that he or she was engaged in work relating to a 'public school' for a

'governmental entity.'" *Cain v. Pub. Sch. Employes' Ret. Sys.*, 651 A.2d 660, 662 (Pa.Cmwlth.1994) (citing *Golebieski v. Pub. Sch. Employees Ret. Bd.*, 161 Pa.Cmwlth. 127, 636 A.2d 268 (1993)).

Thorpe challenges several of the Board's and Hearing Examiner's findings leading to the conclusion that she was not employed by the school district/intermediate unit while working for PASS and Elwyn during the years at issue. For example, she challenges the findings that auxiliary services were never provided through school district employees; PASS and Elwyn were responsible for the development and delivery of the auxiliary services they provided as well as for ensuring that the teachers working for them had the requisite certifications; and PASS and Elwyn provided retirement programs for their employees during the time period when Thorpe worked for them. She also complains that the agency finding regarding a proposed contract of employment between an unnamed person and Elwyn should not have supported the legal conclusion that Thorpe is neither entitled to retirement credit for her years working for PASS and Elwyn nor entitled to contributions from the intermediate unit for that time period.

First, we point out that, as even Thorpe recognizes, the Hearing Examiner, affirmed by the Board, recognized the exception and found that hearing services, which are among the auxiliary services listed under Act 89, are not provided through external vendors like PASS and Elwyn. That said, the Hearing Examiner also determined that such a fact was of no moment in this case, where Thorpe did not provide hearing services. Because we are concerned with Thorpe's eligibility or lack thereof based on the facts specific to her situation, which is that she provided auxiliary services to nonpublic school students

through PASS and Elwyn, we agree with the agency that how hearing services are rendered pursuant to Act 89 is not relevant here.

■ Second, there is sufficient evidence in the record to support the findings that PASS and Elwyn were responsible for the development and delivery of the auxiliary services they provided. Although John Irwin, the director of nonpublic programs for the intermediate unit, testified that the intermediate unit checked to make certain that the work contracted for was being performed, he further explained that it did not oversee the administration of the services provided. In fact, he agreed that the vendor "fleshes out" the program's content and the services that it is to implement. Moreover, even though Thorpe testified that she met with intermediate unit supervisors regarding her implementation of the auxiliary services, she also stated that she never met with anyone from the intermediate unit before obtaining her jobs with PASS and Elwyn; PASS and Elwyn hired her to provide the auxiliary services; the director of the intermediate unit never directly supervised her while she worked for PASS and Elwyn; her checks came from PASS and Elwyn; PASS and Elwyn set her work hours, and PASS and Elwyn supervisors gave formal appraisals of her work performance.

Third, even though Irwin testified that the intermediate unit requires the vendors' employees to have the same certificates as the district teachers, and that this information is on file with the intermediate unit, Irwin acknowledged that it is the vendors who are charged with locating the certified teachers to perform these Act 89 services in accordance with district requirements.

■ Next, with respect to the benefits provided by the external vendors, the Hearing Examiner, affirmed by the Board, specifically found that "PASS and Elwyn offered its [sic] employees benefits such as sick leave, retirement programs and health insurance." Finding of Fact No. 26, slip op. at 4. This finding is sufficiently supported by the record, where Thorpe testified that both PASS and Elwyn had medical programs and paid sick leave and Elwyn had a retirement program, but Thorpe left before she was vested.[7]

■ Last, the proposed contract of employment between Elwyn and the unnamed individual mentioned therein was admitted into evidence, but because an objection as to whether Elwyn used such a contract at the time Thorpe worked there was sustained, we agree that this exhibit could not support a determination of Thorpe's ineligibility to receive retirement credit or contributions to her retirement system account during the time she worked for Elwyn. Nonetheless, ample evidence supports the Hearing Examiner's findings without regard to this document and, although it was referenced once in his findings, there is no indication that he gave it any particular evidentiary weight.

■ Essentially, Thorpe's challenge of the facts as found by the Hearing Examiner and the Board amounts to nothing more than dissatisfaction with how the agency accorded evidentiary weight. "However, questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the fact finding agency, and are not usually matters for a reviewing court." *Wyland v. Pub. Sch. Employes'*

---

7. While Thorpe testified that there was no retirement program at PASS, she acknowledged that there was a tax sheltered annuity option employees could choose to take advantage of on their own.

*Ret. Bd.*, 669 A.2d 1098, 1103 (Pa.Cmwlth. 1996).

■ Although Thorpe contends that our decision in *Hawes v. Public School Employes' Retirement Board*, 778 A.2d 1277 (Pa.Cmwlth.2001), supports her position that she is eligible to purchase service credit for the period at issue, we disagree. There, Catherine Hawes was a long-term substitute teacher in the Wallingford–Swarthmore School District for the 1981–82 school year. The salient question was whether, during that time period, Hawes was employed by the school district or by Educational Placement Services, Inc. (EPS), a private corporation that had a contract to provide the district with certified substitutes. In reaching the conclusion that Hawes was actually employed by the school district, we explained that two school district administrators interviewed her for the long-term substitute teacher position, the administrators recommended to the school district that Hawes be hired, Hawes never submitted an application to EPS and was never interviewed by anyone from EPS, the school district provided her teaching assignments, EPS did not supervise her work, EPS issued her paychecks and deducted the taxes, but the school district provided the funds to pay her salary, and, when Hawes challenged the amount of her compensation, she complained to the school district, which increased it.[8]

We explained:

While the intention of the District and EPS may have been for EPS to be the employer of all substitutes, *nothing in the Board's findings indicates that EPS actually functioned as Hawes' employer.* A school district may not evade its statutorily mandated responsibilities by funneling the compensation that it pays to its teachers through a private entity and entering a contract with that entity which states that it, rather than the district, is the employer of the teachers.

778 A.2d at 1281 (emphasis added) (footnote omitted). We thereafter cited Section 1106 of the School Code, 24 P.S. § 11–1106, which specifically provides that "[t]he board of school directors in every school district *shall employ* the necessary qualified professional employes, substitutes and temporary professional employes *to keep the public schools open* in their respective districts in compliance with the provisions of this act." (Emphasis added).

Here, for the relevant period, Thorpe provided educational services to nonpublic school students pursuant to Act 89. It bears repeating that Act 89 partially defines "nonpublic school" as a "nonprofit school, *other than a public school within the Commonwealth of Pennsylvania.*

---

8. We then distinguished the Board's previous decision in *In re Slater* (Nos. 1994–10 and 1994–11, dated March 8, 1996) because, there, "the private corporation ... compensated the claimants, provided their benefits including an optional retirement plan, supervised them on a day-to-day basis including establishing the claimants' working hours, conducted the claimants' performance evaluations and provided the claimants with textbooks and working materials." *Hawes*, 778 A.2d at 1281 n. 5. A reading of the Board's *Slater* decision reveals that Jane Slater and Alice Pakman, claimants therein, sought to purchase retirement credit for their prior service as remedial reading teachers for the PASS program and were denied. Although Slater, like Thorpe, had previously worked for PASS, the Board's relevant findings here include that the money funding Thorpe's paycheck originated from the school district or intermediate unit. The Board made no such finding in *Slater*. Nonetheless, the Board's findings here also indicate that Thorpe, unlike Hawes, had significant contact with the vendor(s) that hired her. While our footnote in *Hawes* certainly does not amount to an affirmance of the Board's decision in *Slater*, we nonetheless note the court-recognized distinctions between the two cases.

..." Section 922.1–A(b) of the School Code, 24 P.S. § 9–972.1(b) (emphasis added). Moreover, pursuant to the Board's necessary findings, which are supported by substantial evidence, Thorpe provided these services while employed by PASS and Elwyn, neither of which fits within the definition of "governmental entity" under Section 8102 of the Retirement Code and its attendant regulations.[9] Accordingly, Thorpe was not engaged in work that related to a public school for a governmental entity, and so did not fall within the Retirement Code definition of "school employee" for purposes of receiving retirement credit.[10]

As the Board here explained:

> [T]he facts-and the applicable law-here are totally different from cases where teachers are required to be employed by the school district and in fact work in public schools under the supervision of public school supervisors (*Hawes*) or where public schools develop, run, supervise and fund a program through an outside administrator (*Muller/McClure*). Here the services were developed, provided and supervised, under contract, by nonpublic school teachers for nonpublic school students.

*In re Appeal of Thorpe* (Nos. 2002–04, 2003–09, dated June 22, 2004), slip op. at 8.

Finally, we reject Thorpe's argument that the Department of Education's (Department) regulation allowing for external vendors to deliver these auxiliary services [11] violates the statutory mandate that "[s]uch services shall be provided directly to the nonpublic school students by the intermediate unit...." Section 922.1–A(c), 24 P.S. § 9–972.1(c). Although Thorpe admits that the Board cannot overrule the Department's regulation that she questions here, she nevertheless asserts that it should have viewed it in the proper context of Act 89. Initially, we note that "[d]epartmental and agency [r]egulations, duly promulgated, have the force of law." *Commonwealth ex rel. Sch. Dist. of Pittsburgh v. Ross*, 17 Pa.Cmwlth. 105, 330 A.2d 290, 292 n. 2 (1975). The Department's regulation permitting the intermediate unit to contract with other agencies or individuals in order to deliver auxiliary services to students does not conflict with the statutory language requiring the intermediate unit to provide the services directly because the intermediate unit is still the public agency responsible to provide these services, including personnel, under the regulations.[12] Furthermore, even if we were to conclude that the Department's regulation somehow violates the statutory language of Act 89, the fact is that, for the period at issue, Thorpe was an employee of PASS and Elwyn and not the school district or intermediate unit. Therefore, the Board properly denied Thorpe's requests to purchase retirement credit.

---

9. "Governmental entity" is further defined in the Board's regulations as "any agency or authority, being a corporate body or body politic created by law, charged with the responsibility of providing public education within this Commonwealth." 22 Pa.Code § 211.2.

10. While Thorpe also relies on the Board's decision in *In re Muller* (Nos. 1998–26 and 1999–18, dated February 4, 2003) to support her position that she is eligible for prior service credit, in that consolidated case, the Board determined, *inter alia*, that the claim-

ants/teachers were actually employed for the relevant period by a consortium of public, vocational-technical schools, which was formed to implement the Youth Apprenticeship Program served by them. Therefore, the claimants/teachers in that case, as opposed to the matter herein, were actually employed by a governmental entity as defined by the Retirement Code.

11. *See* 22 Pa.Code § 112.25(4).

12. 22 Pa.Code § 112.21.

Order affirmed.[13]

## ORDER

AND NOW, this 12th day of July, 2005, the order of the Public School Employees' Retirement Board in the above-captioned matter is hereby AFFIRMED.

---

**13.** Thorpe also complains that the Board failed to make a finding whether she was paid regularly for her educational services, in accordance with the statutory definition of "school employee." Given the whole of our analysis, we are not required to address this assertion.