863 A.2d 432

PENNSYLVANIA SCHOOL BOARDS
ASSOCIATION, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, PUBLIC SCHOOL EM-
PLOYEES' RETIREMENT BOARD, Transacting Business as
the Public School Employees' Retirement System, Appellee,

Philadelphia Federation of Teachers, Local 3 Aft Afl–Cio, and
Pennsylvania State Education Association, Intervenors.

Supreme Court of Pennsylvania.

Argued Dec. 2, 2003.

Decided Dec. 21, 2004.

Anne Elizabeth Hendricks, Esq., Michael Ira Levin, Esq., Huntingdon Valley, for Pennsylvania Schools Boards Association.

David W. Speck, Esq., Charles K. Serine, Esq., Harrisburg, for Public School Employees' Retirement System.

Ralph J. Teti, Esq., Philadelphia, for Philadelphia Federation of Teachers, AFT, Local 3, AFL–CIO.

Thomas W. Scott, Esq., Harrisburg, for PA State Education Association.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, EAKIN and LAMB, JJ.

## OPINION OF THE COURT

Justice CASTILLE.

This appeal arises from a declaratory judgment action challenging appellee Public School Employees' Retirement System's ("PSERS") interpretation of Section 8303(c) of the Public School Employees' Retirement Code, 24 Pa.C.S. § 8101 *et seq.,* as authorizing active members of the system to purchase credit toward retirement for previous school service rendered during a period when the employees were not yet members of

PSERS. The Commonwealth Court held that PSERS correctly interpreted the statute to permit the purchase of credit for prior part-time service that would not have entitled the employees to membership in PSERS at the time the service was rendered. For the reasons that follow, we agree with the Commonwealth Court, and accordingly, we affirm.

The parties stipulated to the relevant facts. PSERS is an independent administrative board of the Commonwealth that manages the pension retirement system for Pennsylvania's public school employees. The Public School Employee's Retirement Board ("Board") is the governing body of PSERS. Prior to 1975, only full-time school employees were entitled to membership in PSERS. In 1975, our General Assembly adopted a new Public School Employees' Retirement Code mandating PSERS membership status for certain part-time employees. Specifically, the 1975 Retirement Code required that, in addition to all full-time employees, all per diem employees working 80 or more days or hourly employees working 500 hours or more in a given fiscal year must be enrolled as active PSERS "members" for that year. *See* 24 Pa.C.S. § 8301(a). The 1975 Retirement Code also permitted PSERS members to purchase credit toward their retirement, which would increase their retirement benefits, for certain part-time service rendered prior to the enactment of the 1975 Retirement Code. *See* 24 Pa.C.S. § 8303(c). From 1975 through 1998, PSERS construed the Code as allowing its active members to purchase credit for prior part-time school service only for those years in which the members had worked 80 or more days or 500 or more hours—*i.e.,* only for years in which they had qualified as "members" of the system. In 1992, consistently with this policy/interpretation, PSERS directed that school districts not report non-qualifying service, which PSERS defined as service involving fewer than 80 days or 500 hours in a given year.

On January 29, 1999, PSERS issued a Policy Statement which effectively reversed its practice of limiting purchase of credit for previous school service to years in which the employee had worked more than 80 days or 500 hours. PSERS

announced in its Policy Statement that active PSERS members could henceforth purchase credit for previous school service irrespective of whether that service met the 80 day/500 hour threshold in a given year. It is this change in policy, and the question of its legitimacy as a matter of statutory interpretation of the Code, which is the crux of this action.

On March 23, 1999, appellant Pennsylvania School Boards Association, Inc. ("PSBA") [1] filed a petition for review in the Commonwealth Court's original jurisdiction seeking declaratory and injunctive relief. PSBA claimed that the 1999 PSERS Policy Statement contravened both the clear meaning and intent of Section 8303(c) of the Retirement Code as well as the historical interpretation of the provision. PSBA sought to bar implementation of the policy, arguing that employee purchases of such previous part-time school service would financially burden its member school districts. The claim for injunctive relief was ultimately dropped, and a scheduled preliminary injunction hearing was canceled, based upon a stipulation between the parties, pursuant to which PSERS would process purchase requests for those members who needed the disputed time to qualify for "30 and out" early retirement incentives or for disability purposes. The parties further agreed that these applications would not be affected by any later court decision on the merits of the dispute. PSERS also agreed to accept but not process other applications to purchase the contested credit, subject to the resolution of this litigation. Thus, PSBA's request for declaratory relief alone is at issue. The Pennsylvania State Education Association and the Philadelphia Federation of Teachers were permitted to intervene in the matter.[2]

The Board filed preliminary objections to PSBA's petition, seeking to eliminate PSERS as a party and to strike those portions of the petition claiming that the Board owed a

1. PSBA is a voluntary association of local school districts and the members of local school boards of those districts.

2. Intervenor Pennsylvania State Education Association has filed a brief in support of appellee PSERS; intervenor Philadelphia Federation of Teachers has not filed a brief.

fiduciary duty to PSBA under the Retirement Code. On May 17, 2000, the Commonwealth Court, in a published opinion, denied the motion to strike PSERS as a party, but ruled that PSBA indeed lacked standing to assert that the Board owed PSBA a fiduciary duty. *Pennsylvania School Boards Association, Inc. v. Public School Employees' Retirement System,* 751 A.2d 1237 (Pa.Cmwlth.2000) (*PSBA v. PSERS I*). Concluding that the Retirement Code expressly limits those standing in a fiduciary relationship with PSERS to "the members of the system," and that PSBA is not a member of the system, the Commonwealth Court sustained the Board's preliminary objection on the issue of fiduciary duty and struck the paragraphs of PSBA's petition alleging a breach of fiduciary duty.

Following discovery and the parties' stipulation of facts, PSERS filed a motion for summary judgment claiming that its new policy was legitimate and enforceable because Section 8303(c) of the Retirement Code permits PSERS members to purchase credit for any pre-membership service rendered as a school employee. PSERS argued that the Code broadly defines "previous school service" as any service by a school employee, whether full- or part-time, regardless of whether the school employee was a member of PSERS at the time the service was rendered, and regardless of any minimum of hours or days worked in a given service year. The Commonwealth Court, in a second published opinion, agreed with PSERS's interpretation of Section 8303(c), basing its view upon a plain meaning reading of the statute. The panel noted, *inter alia,* that if the General Assembly had intended to limit the purchase of part-time service to service which, when rendered, would have qualified an employee for membership in PSERS (*i.e.,* 80 days or 500 hours in a given year), the legislation easily could have included language making that intention clear: "It could have said 'previous school service *as a member*' in Section 8303(c), or it could have defined 'previous school service' as 'school service rendered as a member' in Section 8102. It did neither." *Pennsylvania School Boards Association, Inc. v. Public School Employees' Retirement System,* 804 A.2d 737, 743 (Pa.Cmwlth.2002) (*PSBA v. PSERS*

*II).* Accordingly, the panel entered summary judgment in favor of PSERS.

PSBA now appeals both Commonwealth Court rulings to this Court. We will address PSBA's appeal from the entry of summary judgment in *PSBA v. PSERS II* first, as it directly addresses the merits of PSBA's claim that PSERS's interpretation of Section 8303(c), an interpretation approved by the Commonwealth Court panel below, is erroneous. Because this issue involves the proper interpretation of a statute, it is a question of law, and thus, this Court's review is plenary. *See Commonwealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003); *C.B. ex rel. R.R.M. v. Commonwealth, Department of Public Welfare,* 567 Pa. 141, 786 A.2d 176, 180 (2001). The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* provides that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). As a general rule, the best indication of legislative intent is the plain language of a statute. *See, e.g., Gilmour Manufacturing; Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Courts may resort to other considerations to divine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S.1921(b). Thus, this Court has consistently held that other interpretive rules of statutory construction are to be utilized only where the statute at issue is ambiguous. *Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004) (*citing O'Rourke v. Commonwealth, Dept. of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)); *see also Ramich v. Worker's Compensation Appeal Bd. (Schatz Electric, Inc.),* 564 Pa.656, 770 A.2d 318, 322 (2001). When construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903. The Statutory

Construction Act also directs that a statute "be construed, if possible, to give effect to all its provisions," so that no provision is rendered mere surplusage. 1 Pa.C.S. § 1921(a).

 Section 8303(c), enacted in 1975, allows active PSERS members to purchase credit toward retirement benefits for previous school service, as follows:

> **(c) Purchase of previous creditable service.**—Every active member of the system or a multiple service member who is an active member of the State Employees' Retirement System on or after the effective date of this part may purchase credit and receive eligibility points:
>
> (1) as a member of Class T–C for previous school service or creditable nonschool service; or
>
> (2) as a member of Class T–D for previous school service, provided the member elects to become a Class T–D member pursuant to section 8305.1 (relating to election to become a Class T–D member);
>
> upon written agreement by the member and the board as to the manner of payment of the amount due for credit for such service; except, that any purchase for reinstatement of service credit shall be for all service previously credited.

24 P.S. § 8303(c).[3] PSBA argues that PSERS's interpretation of Section 8303(c), which was approved by the Commonwealth Court, contradicts the clear intention of our General Assembly, basic principles of statutory construction, and nearly twenty-five years of contrary practice preceding PSERS's 1999 Policy Statement. PSBA also argues that the Boards interpretation is contrary to the Commonwealth Courts holding in *Board of School Directors for Tredyffrin/Easttown School District v. Public School Employees Retirement Board,* 60 Pa.Cmwlth. 1, 430 A.2d 1018 (1981) (*en banc* ). In addition,

**3.** Class T–C and Class T–D relate to the date an employee became a member of PSERS and the employee's rate of contribution to PSERS. An employee who became a PSERS member prior to July 1, 2001, was automatically a Class T–C member, while those becoming members on or after July 1, 2001 are Class T–D members. Between May 17, 2001 and December 31, 2001, Class T–C members were required to elect to remain in Class T–C or change to Class T–D, which provides a higher member contribution rate and retirement benefits. This distinction is irrelevant for purposes of this appeal.

PSBA argues that PSERS's abrupt policy change was made in the absence of any triggering event and with no consideration of its practical and financial consequences, which will include a multi-million dollar increase in unfunded liability that would have to be paid through some form of increased employer contributions.[4]

PSBA construes the plain language of the statute as imposing a limitation on both membership and "creditable" prior service which requires that a school employee worked 80 or more days or 500 or more hours in a given fiscal year. This minimum day/hour limitation, according to PSBA, applies equally to the purchase of credit for previous school service. As further evidence of this supposed legislative intent to exclude years of part-time service involving less than 80 days or 500 hours, PSBA notes that the Retirement Code nowhere expressly permits the purchase of credit for years in which an employee worked fewer than 80 days or 500 hours. PSBA also points to the heading of Section 8303, which refers to "creditable" prior service, and argues that such creditable service can only mean the same 80 days/500 hours of service in a given year which would trigger mandatory "membership" in the system for that year under Section 8301(a)(2).

PSERS counters that its interpretation of the prior school service eligible for purchase credit follows the plain, unambiguous meaning of the Retirement Code and is consistent with its obligation to liberally administer the Code in favor of its members. PSERS notes that the word "creditable" does not appear in the text of Section 8303(c) in conjunction with "prior school service." Instead, Section 8303(c) expressly reads, in the disjunctive, "previous school service or creditable non-school service." PSERS thus argues that the plain language of Section 8303(c) allows for the purchase of **any previous school service** whether "creditable" at that time or not; and if the General Assembly intended to limit the service to "credit-

4. Individual school districts would not be responsible for the employer contribution for credit purchased by their PSERS members. Instead, any increase in unfunded liability resulting from purchases of part-time service credit would be recovered through an increase in the overall contribution rate.

able" school service, it would have included that restriction, just as it did in the very same sentence when addressing "nonschool service."

As further support for its plain meaning reading of the statute, PSERS points to the definitional section of the Retirement Code, which defines "school service" as, "Service rendered by a school employee," without limiting that school service to creditable service or service involving at least 80 days or 500 hours in a given fiscal year. 24 Pa.C.S. § 8102. PSERS also adverts to Section 8302(a) of the Code, which sets forth a scheme for computing creditable school service, without regard to the number of days or hours of service worked in a particular fiscal year.[5] Thus, PSERS submits that the plain language of the Retirement Code indicates that all school employees who are active members of PSERS may purchase credit for prior service in PSERS whether they were then salaried, per diem or hourly employees because, although the

5. Section 8302(a) provides as follows:

(a) Computation of credited service.—In computing credited school service of a member for the determination of benefits, a full-time salaried school employee shall receive one year of credit for each school year or the corresponding fraction thereof, in accordance with the proportion of the full school year for which the required regular member contributions have been made, or for which such contributions otherwise required for such service were not made solely by reason of any provision of this part relating to the limitations under IRC 401(a)(17) or 415(b). A per diem or hourly school employee shall receive one year of credited service for each nonoverlapping period of 12 consecutive months in which he is employed and for which contributions are made, or would have been made but for such limitations under the IRC, for at least 180 full-day sessions or 1,100 hours of employment. If such member was employed and contributions were made for less than 180 full-day sessions or 1,100 hours, he shall be credited with a fractional portion of a year determined by the ratio of the number of full-day sessions or hours of service actually rendered to 180 full-day sessions or 1,100 hours, as the case may be. A part-time salaried employee shall be credited with the fractional portion of the year which corresponds to the service actually rendered in relation to the service required as a comparable full-time salaried employee. In no case shall a member receive more than one year of credited service for any 12 consecutive months or a member who has elected multiple service receive an aggregate in the two systems of more than one year of credited service for any 12 consecutive months.

24 Pa.C.S. § 8302(a).

Code restricts which part-time employees may be deemed members in Section 8301, it does not restrict what amount or type of prior part-time service can be purchased pursuant to Section 8303(c) once a part-time employee becomes an active member. PSERS also argues that its interpretation is consistent with the State Employee Retirement Board's interpretation of similar language contained in the State Employees' Retirement Code ("SERS Code"). *See* 71 Pa.C.S. § 5101 *et seq.*

Finally, PSERS argues that its interpretation of the Code provision it is charged to administer is, at a minimum, reasonable, and it is therefore entitled to deference under settled law.[6] In response to PSBA's complaint that PSERS's new interpretation is an abrupt *volte face* from the policy it had followed for nearly a quarter century, PSERS argues that an agency is not obliged to be inflexible, citing language from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)—to the effect that: "An initial agency interpretation is not carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis," *id.* at 863–64, 104 S.Ct. 2778—PSERS maintains that its new interpretation is "entitled to great weight."

We agree with PSERS that the plain and unambiguous language of the Retirement Code does not limit the purchase of credit for previous school service to those years in which a school employee had worked a minimum of 80 days or 500 hours. The language of Section 8303(c) plainly provides that Class T–C members may purchase credit for "previous school service or creditable nonschool service" and that Class T–D members may purchase credit for "previous school service." The General Assembly obviously considered when "creditable" prior service should be required, yet did not include that word

---

6. *See, e.g., In re Nomination Papers of Lahr,* 577 Pa. 1, 842 A.2d 327, 333 n. 7 (2004) (*citing Gilmour Manufacturing,* 822 A.2d at 679 (interpretation of agency charged with administration of Act is entitled to deference unless interpretation is unwise or violative of legislative intent)).

as a modifier of previous school service—which it certainly and easily could have done had it intended to so limit purchases of credit by PSERS members. It is not this Court's function to read a word or words into a statute that do not actually appear in the text where, as here, the text makes sense as it is, and the implied reading would change the existing meaning or effect of the actual statutory language. *See* 1 Pa.C.S. § 1923(c) ("Words and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof."). In the case *sub judice,* judicial insertion of the word "creditable" to modify and qualify the previous school service made eligible for purchase credit in Section 8303(c), or importation of a non-textual 80 day/500 hour minimum yearly threshold, would dramatically alter the scope and operation of the statute, and indeed, would conflict with the purpose and intent of the statute as revealed by its plain language.

PSERS is also correct that this plain language construction is buttressed by the plain language of other Retirement Code provisions, including the general definition of "school service" in Section 8102, which is not qualified by a "creditable" modifier or other limitation, and the scheme for determining the amount of credit a per diem or hourly employee may earn set forth in Section 8302(a), which does not limit such service to years involving a minimum of 80 days or 500 hours. Furthermore, as PSERS has also noted, its plain language interpretation is supported by the State Employees' Retirement Board's administrative interpretation of virtually identical language in the SERS Code.[7] For these reasons, this Court concludes that the express language of Section 8303(c) permits

7. Like the Retirement Code provisions at issue here, the SERS Code has a threshold a state employee must meet in order to be eligible for membership in that system. Section 5301 of the SERS Code requires that a state employee work in excess of 100 days or 750 hours in a 12–month period to qualify for membership. 71 P.S. § 5301. Sections 5303 and 5504 of the SERS Code contain the same distinction between "previous state service" and "creditable nonstate service" that Section 8303(c) makes with regard to "previous school service" and "creditable nonschool service." The SERS Board interprets the SERS Code to

active members of PSERS to purchase credit for any previous school service, not merely previous "creditable" service or service rendered in a year in which certain minimum hourly or per diem requirements were achieved.

PSBA's arguments against this plain meaning construction are not persuasive. PSBA's claim that the Retirement Code's limitation of PSERS "membership" to those school employees who work at least 80 days or 500 hours in a fiscal year should be construed to apply to the balance of the Code is belied by the very text of the statute, which distinguishes between PSERS membership and school employee status. As the Commonwealth Court aptly noted, under the Code, "school employee" and PSERS "member" are not synonymous terms. *PSBA v. PSERS II,* 804 A.2d at 742–43. Section 8102 defines "school employee" as "[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular remuneration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis." A PSERS "member," on the other hand, is more narrowly defined as a school employee who meets the 80 day/500 hour yearly threshold. 24 Pa.C.S. 8301(a). PSBAs argument that the 80 day/500 hour limitation applicable to a "member" should be construed to apply throughout the Retirement Code would render meaningless the specific and broader definition of school employee set forth by the General Assembly. We will not read the Code as if the specific definition of school employee were mere surplusage. *See* 1 Pa.C.S.1921(a).

■ PSBA also argues that the interpretation of the statute forwarded by PSERS and accepted by the Commonwealth Court should be deemed suspect because there is a prospect that it would increase unfunded liability for pensions by

allow state employees, once they qualify for membership, to purchase credit for past service that did not meet the 100 day/750 hour threshold necessary for "membership" in the system. The marked similarity between the two statutory schemes and the fact that the administrative board of each retirement system interprets the language of its Code in the same manner is further proof of the propriety of our plain language construction.

approximately $77.4 million, a result the General Assembly could not have foreseen or intended when it enacted the 1975 Retirement Code. In addition, PSBA posits that there will be greatly increased costs to public school entities due to processing claims for previous service that was non-qualifying at the time it was rendered, especially because some school districts may not have maintained the records necessary to determine the amount of service previously performed by part-time employees. PSBA also argues that the PSERS interpretation can lead to an abuse of the Retirement System by employees who opt to work 80 or more days or 500 or more hours in only one year solely in order to purchase credit for many years of past service that did not meet the 80 days/500 hours threshold.

PSERS responds that the unfunded liability claimed by PSBA is not a sufficient reason for ignoring the plain meaning of the statute or impairing the rights of PSERS members. In support, PSERS cites to *Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984), where this Court recognized that, although the states duty to maintain the actuarial soundness of a retirement system might be a valid basis for some changes in a retirement system, it could not justify a unilateral reduction in retirement benefits. *Id.* at 966 (*citing and adopting Catania v. State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342, 1354 (1982)) (Opinion of Nix, J., in Support of Grant of Summary Judgment). In addition, PSERS claims that there is no significant burden imposed upon school districts in the processing of purchase requests as the school districts already have mechanisms in place since the enactment of the 1975 Retirement Code, and requests by employees whose retirement is not imminent need not be processed immediately.

Once again, PSBAs arguments miss the mark because they essentially invite this Court to ignore the plain meaning of the statute in pursuit of some perceived contrary purpose, or to avoid consequences which, as a matter of policy, might be better avoided. In the absence of a statutory ambiguity, this Court is not empowered to make such judgments. Indeed, the question of which legislative policy and or balancing of

competing factors is the best, and what costs are reasonable or tolerable, are matters within the peculiar bailiwick of the General Assembly, not of this Court. Having determined that the interpretation of the Code employed by PSERS and the Commonwealth Court is consonant with its plain meaning, we have no occasion to consider such extraneous matters of construction so as to defeat the plain meaning.[8]

PSBA further argues that the Commonwealth Courts acceptance of PSERSs interpretation is contrary to the Commonwealth Courts holding in *Board of School Directors for Tredyffrin/Easttown School District v. Public School Employees' Retirement Bd., supra,* where the panel held that "the Legislature[']s intent here was that creditable school service not previously credited be available for purchase to part-time employees." 430 A.2d at 1020. The *Tredyffrin* panel thus determined that PSERS members could purchase past service that would have qualified them for membership under the 1975 Retirement Code *i.e.,* service of at least 80 days or 500 hours in a fiscal year. PSBA claims that this holding makes it

8. It is notable, as revealed in the intervenor brief of the Pennsylvania State Education Association, that there are equitable factors which cut against the financial equities argued by PSBA. Intervenor focuses upon what it deems to be the "human impact" of a statutory policy permitting the purchase of credit for previous school service. Intervenor notes that, while a school year consists of 180 working days during a 12–month period, many school employees work in excess of 180 days yet still receive credit for but one year of service; the excess days cannot be "banked" for use in a year when an employee works fewer than 180 days. Moreover, intervenor notes that, during the course of a school employee's career, there are numerous reasons why a member may not reach the 180 day mark, including illness, and these reasons will sometimes compel an employee to retire at the end of a school year while shy of the minimum number of years required for full retirement benefits. When this happens, a member could be denied full retirement benefits if he cannot purchase credit for retirement for previous service. Providing such members with a method to recoup their fractional years of service may permit them to reach a milestone necessary for full retirement benefits, which is a fitting end to the careers of dedicated, long-term school employees with short gaps in their service history. We offer no view upon the comparative merits of this "policy" argument or PSBA's "policy" argument. The fact that such arguments can be mustered on either side corroborates that this was and is a matter for legislative balance and determination. In the absence of textual ambiguity, this Court's duty is to construe the statute as is.

clear that **only** service that would qualify a member for membership is subject to purchase. PSERS aptly replies, however, that there is no tension with *Tredyffrin.* The issue in *Tredyffrin* was whether credit for prior service years involving more than 80 days or 500 hours could be purchased. The court did not consider or address whether credit for service not meeting the 80 days/500 hours threshold could be purchased, since neither party raised that issue.

Finally, with respect to PSBA's complaint that PSERS's new policy reversed an interpretive position it had maintained for 24 years, we note that, while that circumstance might affect the level of deference this Court would otherwise accord the administrative interpretation, it does not affect our ultimate determination, which is based upon our understanding of the plain meaning of the Code's unambiguous terms. *See Gilmour Manufacturing,* 822 A.2d at 679 ("While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation ....") (citation and quotation omitted). This Court has not hesitated to overturn even longstanding and consistent administrative interpretations of a statute in circumstances where, in our first encounter with the interpretation, we found it to be inconsistent with the meaning of the statute. *See id.* at 681–82 (declining to follow administrative regulation first adopted in 1976). The PSERS Board's new policy is consonant with our understanding of the plain meaning of the statute. That PSERS previously interpreted the provision inconsistently with that plain language is no reason for this Court, in its first encounter with the provision, to depart from what the statute plainly provides. Accordingly, we hold that the Commonwealth Court properly interpreted Section 8303(c) to permit PSERS active members to purchase credit for previous years of school service, even if that previous school service fell short of the 80 days/500 hours yearly threshold which would have been required for mandatory PSERS membership.

■ We now turn to the second issue, arising out of the Commonwealth Court's decision in *PSBA v. PSERS I, i.e.,* whether PSBA had standing to bring a claim for breach of fiduciary duty against PSERS or the Board. This, too, is a legal question as to which our review is plenary. The *PSBA v. PSERS I* panel noted that the Retirement Code expressly limits those to whom the PSERS Board owes a fiduciary duty to the members of the system. *See* 24 Pa.C.S. § 8521(e) ("The members of the board, employees of the board, and agents thereof shall stand in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund. . . ."). PSBA did not allege that the Board breached its fiduciary duty to PSERS members nor that PSBA is a member of the system. The panel therefore held that "PSBA has failed to provide specific authority for its assertion that PSBA, itself, is owed a fiduciary duty by PSERS or the Board." *PSBA v. PSERS I,* 751 A.2d at 1240. Agreeing with the PSERS Board that the statutory language establishing a fiduciary duty to the members of the system limited that duty only to the members of the system, the panel reasoned as follows:

> The Board asserts the maxim *expressio unius est exclusio alterius* (to express one thing is to exclude the other) to make evident that by specifying a fiduciary duty to members of the system, the legislature meant to exclude all others, such as PSBA. It has long been a tenet in this Commonwealth that a breach of duty owed to one class of persons cannot create a cause of action in favor of one external to the class. *Bouy v. Fidelity–Philadelphia Trust Co.,* 338 Pa. 5, 8, 12 A.2d 7, 8 (1940). PSBA and its member school districts are not members of the retirement system and therefore not within the class of persons owed a fiduciary duty by the Board. "A plaintiff must show that as to him there was a breach of duty." *Id.*

*PSBA v. PSERS I,* 751 A.2d at 1240.

The panel went on to distinguish this case from those in which this Court and the Commonwealth Court have recog-

nized the standing of taxpayers to challenge an agency decision that would otherwise go unchallenged because the decision benefits those directly affected by it. *See Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988); *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979); *Rizzo v. City of Philadelphia,* 136 Pa.Cmwlth. 13, 582 A.2d 1128 (1990). None of those cases involved a statute directly establishing a fiduciary duty, however; here, in contrast, the Retirement Code specifically provides that the Board, which is a legislative creation, stands in a fiduciary relationship to PSERS members, without suggesting any such relationship with other entities.

In our view, the Commonwealth Court's decision is correct and well-reasoned. Because the statutory scheme at issue in this case establishes the existence of the Board's fiduciary duties, and the statute does not extend any such duty to PSBA, PSBA lacks standing to bring a claim alleging a breach of fiduciary duty on the part of PSERS or its Board. Accordingly, we affirm the decision in *PSBA v. PSERS I*, which struck the allegations in PSBA's Petition for Review alleging a breach of fiduciary duty.

For the foregoing reasons, we affirm the orders below.

Justice SAYLOR did not participate in the consideration or decision of this case.

Former Justice LAMB did not participate in the decision of this case.