IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Embrescia, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 744 C.D. 2025 |
| | : | |
| Allegheny County Board | : | Submitted: June 30, 2025 |
| of Elections and Alex Rose | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE LORI A. DUMAS, Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                       FILED: July 25, 2025

Michael Embrescia (Appellant) appeals from the June 5, 2025 order entered by the Allegheny County Court of Common Pleas (trial court) denying his Amended Action for Declaratory Judgment.[1]  After careful review, we affirm.

## I.   __Background and Procedural History__

The relevant facts and procedural history of this case are as follows.  In the 2023 Allegheny County Municipal Election[2] held on November 7, 2023, pursuant to the Allegheny County Home Rule Charter (Charter),[3] Republican Sam DeMarco (Councilman DeMarco) was elected to one of the two Allegheny County

---

[1] The motion was filed pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, and Pennsylvania Rule of Civil Procedure (Pa.R.Civ.P.) 1061.

[2] The term "Municipal Election" is defined in the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591, as the election which the Constitution of the Commonwealth requires to be held in odd-numbered years.  Section 102 of the Election Code, 25 P.S. § 2602.

[3] County of Allegheny, Pennsylvania, Home Rule Charter (Charter) (2000), *available at* https://ecode360.com (last visited 7/24/2025).

Council (Council) At-Large seats. (Joint Stipulation of Facts (S/F) at 1.) On January 14, 2025, Councilman DeMarco resigned his seat as a member of the Council. (S/F at 2.) Councilman DeMarco's term began on January 2, 2024, and was set to expire on January 2, 2028. *Id.*

On February 11, 2025, in accordance with Section 1.3-309(b) of the Allegheny County Administrative Code (Administrative Code),[4] the Allegheny County Council appointed Appellant to the position of interim At-Large member of the Council to fill Councilman DeMarco's vacant seat. *Id.* Section 1.3-309 of the Administrative Code, entitled "Vacancies," provides at subsection (b), in pertinent part:

> (b) If a County Council seat becomes vacant, County Council shall appoint an interim County Council member within 30 days. . . . . The interim County Council [m]ember shall hold the vacated seat until the vacancy is filled at the *next available municipal election*. The person elected at the *next available municipal election* shall take office as soon as possible after the certification of the election and shall serve the unexpired portion of the vacated term.

*Id.*, § 1.3-309(b). As required by the Charter, Allegheny County adopted its Administrative Code in June of 2000. *See Wecht v. Roddey*, 815 A.2d 1146, 1149 (Pa. Cmwlth. 2000). Section 1.4-406 of the Charter directs the Council to "adopt by ordinance and amend as needed, an Administrative Code that shall provide a complete plan of organization, departmental structure and operation for the County government." Therefore, the Charter and the Administrative Code are intended to operate together, with the Administrative Code providing additional detail not included in the Charter.

---

[4] The Administrative Code is also referred to as the Allegheny County Code.

The next municipal election is scheduled to occur on November 4, 2025. (S/F at 3.) The next municipal election at which **both** of the County's At-Large Council seats will be on the ballot is the November 2027 Municipal Election.[5] *Id.* at 2. After Councilman DeMarco resigned from his At-Large Council seat and Appellant was temporarily appointed to serve in Councilman DeMarco's position on an interim basis, the Board of Elections (BOE) listed the At-Large Council seat formerly held by Councilman DeMarco on the Republican Primary ballot for the November 2025 Municipal Election. *Id.* On March 11, 2025, Appellant circulated his nomination petition as a Republican Primary candidate for the open At-Large seat on the Council to which he had been temporarily appointed. No other person filed a party nomination petition in the Republican Primary for the now open At-Large Council seat. *Id.* at 3. On April 16, 2025, Alex Rose (Candidate Rose) announced that he would seek election in the 2025 Municipal Election as an Independent for the open At-Large seat. *Id.*

On April 24, 2025, Appellant filed a Declaratory Judgment Action challenging the BOE's interpretation of the Charter and the Administrative Code, which would require him to run for election in November of 2025, rather than continue to hold the recently vacated At-Large Council seat until the 2027 Municipal Election. (Original Record (O.R.) at 4-13.)[6] According to the Complaint, the BOE incorrectly interpreted Section 1.3-305(d) of the Charter and Section 1.3-309 of the Administrative Code. (O.R., at 9-10.) On April 25, 2025, Appellant filed a Motion

---

[5] The Council consists of 15 members. Thirteen of its members are elected by individual districts. The remaining two members of the Council are elected by the voters of the entire county and thus are "At-Large" Council members. *See* Section 1.3-305(c) of the Charter.

[6] Because the Original Record was filed electronically and not paginated, references to the Original Record reflect electronic pagination.

to Schedule an Expedited Hearing on the Complaint, which the trial court granted. On May 5, 2025, Appellant filed an Amended Declaratory Judgment Action, seeking judicial declarations that (1) under the Administrative Code, Appellant should serve the entire unexpired term of former At-Large Councilman DeMarco; (2) that as an At-Large County Council [member,] [Appellant] shall immediately be instated to a position on the BOE; and (3) that the "next available municipal election for [A]t-[L]arge Council members is the 2027 Municipal Election." (O.R., at 31-41.)[7]

The trial court scheduled Appellant's expedited hearing for May 12, 2025. (O.R., at 14-21, 23-24.) At the hearing, Appellant's Counsel restated the arguments made in Appellant's Amended Complaint. He also stated:

> [T]here is a constitutional provision in Pennsylvania requiring [] uniformity in these offices and requiring that it encourages the minority representation on these county boards in the Pennsylvania [C]onstitution. That's part of our brief you'll see.

(Notes of Testimony (N.T.) at 58; 5/12/2025.)

Appellant argued before the trial court that in determining when he should be required to run for the At-Large Council seat he holds under an interim appointment, the trial court should look not only to the Administrative Code provision governing the filling of vacancies, Section 1.3-309, but must also look to Section 1.3-305 of the Charter, which provides for the initial election of two At-Large Council members at subsection (d), and then specifies at subsection (e) that At-Large Council members shall be elected at four-year intervals thereafter. (O.R., 370-73.) Specifically, Section 1.3.-305(d) and (e) provide:

---

[7] Appellant also requested that the trial court issue any order necessary to implement and enforce the Court's Declarations pursuant to the Declaratory Judgments Act and provide Appellant any other relief deemed appropriate by the Court. (O.R., at 38.)

4

(d)     Any political party or body shall be entitled to nominate one candidate for the office of [A]t-[L]arge County Council Member.  In the municipal election, each voter may vote for no more than one candidate for the office of at-large Council Member and the two candidates receiving the highest number of votes shall be elected as the [A]t-[L]arge County Council Members.

(e)     At the first election under this Charter and at four-year intervals thereafter, the two at-large County Council Members shall be elected.

Charter, § 1.3-305(d) & (e)(O.R., at 31-41.)

Appellant also asserted that the BOE's interpretation of the language of the Charter and the Administrative Code, which would require him to run for re-election in the 2025 Municipal Election, violates two provisions of the Pennsylvania (PA) Constitution, article VII, section 3 and article VII, section 6.  (PA. CONST. art. VII, §§ 3 & 6.)  Appellant argued that as a matter of statutory interpretation, when Section 1.3-305 of the Charter was drafted, the intent of the provision was to preserve minority party representation on the County Council.  (O.R., at 253-57.)

Appellant argued that article VII, section 3 of the PA Constitution supports his argument because it provides:

All elections for . . . county, . . . officers, **for regular terms of service** shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year, . . . .

PA. CONST. art. VII, § 3 (emphasis added).  According to Appellant "[t]he regular term of service for an At-Large County Council Member is four years.  Clearly, the Pennsylvania Constitution does not contemplate electing At-Large council members to serve the remainder of an interim term created by a vacant seat."  (O.R., at 257.)

5

Appellant also argued that the PA Constitution emphasizes the importance of uniformity in election laws throughout the Commonwealth. He asserted that interpreting the Charter and Administrative Code to provide for an election where one of the major political parties is not on the ballot violates this requirement of uniformity. *Id.* Appellant asserts that the language of article VII, section 6 of the PA CONST, which provides that "[a]ll laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State," PA. CONST. art. VII, § 6, would be violated by holding an election in which one political party was not allowed to participate. *Id.*

In response, the BOE argued that the plain language of Section 1.3-309 of the Administrative Code requires Appellant to run for re-election in the 2025 Municipal Election if he wishes to retain his At-Large County Council seat. (O.R., at 222-25.) In addition, it asserted that Appellant's claim that he need not run in the 2025 Municipal Election has been waived by his voluntary participation in the Primary Election seeking to win reelection for the remainder of the term. Therefore, it claimed, he took no action consistent with preserving his legal right to remain in the position until the 2027 Municipal Election. (O.R., at 233-35.) Finally, the BOE argued that Appellant's Declaratory Judgment Action is barred by laches due to Appellant's inexcusable delay in bringing his action only after the ballots for the 2025 Municipal Election were finalized and transmitted to the vendor for printing. (O.R., at 235-37.)

The trial court denied Appellant's request for declaratory relief because it agreed with the BOE that Section 1.3-309(b) of the Administrative Code requires Appellant to run as a candidate in the November 2025 Municipal Election if he wishes to retain the vacated Council seat to which he was appointed. It disagreed that both Sections 1.3-305 and 1.3-309 are relevant to this case and based its holding on the language of Section 1.3-309(b) alone and on principles of statutory

6

construction. It found Section 1.3-309 of the Administrative Code provides procedures to be used when filling vacancies on the Council and also addresses the procedure for making interim appointments to vacated Council seats. The provision does not distinguish between At-Large and district County Council members. The trial court found this lack of a distinction between types of Council members supports the contention that Appellant, like any other interim appointee, must run in the "next available election" rather than continue to hold his interim appointment until the "next available election in which two At-Large Council positions are open" as Appellant contends. (Trial Ct. Op. at 11.)

The trial court rejected Appellant's attempt to go beyond the plain meaning of Section 1.3-309(b) in order to interpret this section *in pari materia* with other provisions of the Charter or Administrative Code because it found the plain meaning of the term "available" in Section 1.3-309(b) to be unambiguous. (Trial Ct. Op. at 11.)

> While it is true that, whenever possible, the [Charter] should be construed to give effect to all of its provisions (*see* 1 Pa.C.S. § 1921(a)), that is not what [Appellant's] interpretation achieves. Instead, it alters the plain meaning of a particular subsection by relying on the Election section for At-Large council members, which was instead intended to stand alone. Additionally, the last sentence would be rendered superfluous under [Appellant's] interpretation regarding the remainder of the unexpired term. The last sentence, when read in context, indicates that the unexpired term is something that occurs after a certified election. *See* 1 Pa.C.S.[] § 1921.

*Id.* at 12-13.

The trial court also rejected Appellant's assertion that its interpretation violated provisions of the PA Constitution, stating that Appellant "fails to take into consideration the fundamental differences that naturally exist between traditional

7

county governments and those operating under home[ ]rule charters." *Id.* at 19. The trial court next rejected the BOE's argument that in order to avoid waiving his claim, Appellant was required to file his Declaratory Judgment Action before commencement of the 2025 nomination petition period. (Trial Ct. Op. at 20.) The trial court found there is no requirement that a declaratory judgment action be filed prior to the commencement of the nomination petition period. In its opinion, the trial court stated:

> [Appellant's] actions reflect an effort to preserve future eligibility for the At-Large vacancy while facing an immediate decision. [Appellant] was simply responding to [the BOE's] directive, with the reasonable belief that a final resolution of the matter would not be attainable in the short one-week window following the appointment and the start of nominate[on] petition circulation.

(Trial Ct. Op. at 20.) Regarding the BOE's laches argument, the trial court found that the BOE suffered no prejudice as a result of any alleged delay by Appellant in filing his request for a declaratory judgment. (Trial Ct. Op. at 20-21.)

The trial court noted that in the years since the Charter went into effect, the BOE has consistently interpreted the relevant language of the Charter in the same manner that both the trial court and the BOE interpreted it here. *Id.* at 20. The trial court also cited Justice Dougherty's concurrence in *Baxter v. Philadelphia Board of Elections*, 325 A.3d 645 (Pa. 2024), for its emphasis on the importance of judicial restraint during ongoing elections. (Trial Ct. Op. at 22.)

## II. <u>Issues</u>

On appeal, we are presented with the following issues for our review: (1) whether Appellant, who holds an interim appointment as an At-Large Council member, is required to run for election in the November 2025 Municipal Election if he wishes to complete the remainder of the vacating Council member's term;

8

(2) whether the trial court's interpretation of the Charter and Administrative Code violates provisions of the PA Constitution, such as article VII, section 6 and article VII, section 3[8]; (3) whether Appellant waived his arguments by running for office in the 2025 Republican Primary Election; and (4) whether Appellant's request for a declaratory judgment should be rejected because he is guilty of laches.[9]

### III.   Discussion[10]

*A. Legal Context*

The issues raised by Appellant will be addressed in the context of the Charter and the Administrative Code, as these are the controlling documents in this case.  By way of background, the PA Constitution was revised in 1968 to permit municipalities to adopt home rule charters.  Article IX of the PA Constitution provides, in pertinent part:

> Municipalities shall have the right and power to frame and adopt home rule charters. . . .  A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

---

[8] In his Statement of Issues to be Presented on Appeal, Appellant lists as issues arguments relating to whether the trial court's interpretation of the Charter violates article IX, section 4 and article I, section 5.  Because these arguments were not raised before the trial court, we find them to be waived.

[9] Appellant also argues in his brief that the trial court erred in relying on the unofficial transcripts of the Charter Drafting Committee above. (Appellant's Br., at 38)  We will not address this argument because there is no indication that the trial court based its determination on those transcripts.

[10] Our standard of review in a declaratory judgement action is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *City Council, City of Reading v. Eppihimer*, 835 A.2d 883, 886 n.5 (Pa. Cmwlth. 2003)

9

PA. CONST. art., IX, § 2. Thus, under our state's Constitution, a home rule municipality's exercise of legislative power is presumed valid, absent a specific constitutional or statutory limitation. *SEPTA v. City of Philadelphia*, 101 A.3d 79, 88 (Pa. 2014).

The Charter was enacted pursuant to the Home Rule Charter and Optional Plans Law (HRC Law), 53 Pa.C.S. §§ 2901-2984. Section 2961 of the HRC Law sets forth the powers granted to a municipality that has chosen to adopt a home rule charter. It states that such a municipality "may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter." 53 Pa.C.S. § 2961.[11] Therefore, a presumption exists that for a county operating under a home rule charter, the exercise of power is valid if no restriction exists in the Constitution, the Charter itself, or the acts of the General Assembly. *Fraternal Order of Police, Fort Pitt Lodge No. 1 v. City of Pittsburgh*, 644 A.2d 246, 249 (Pa. Cmwlth. 1994). As noted by the trial court, the HRC Law provides that "[a]ll grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality." 53 Pa.C.S. § 2961.

The Charter contains a provision addressing the initial election of County Officers, and the Administrative Code provides a separate section that addresses the filling of vacancies. Section 1.3-305(d) and (e) of the Charter provides in pertinent part:

---

[11] Section 2962 delineates limitations on a municipality's powers; these are areas in which the legislature continues to exercise direct control of municipalities in the Commonwealth. 53 Pa.C.S. § 2962. None of the subsections of Section 2962 are applicable to this case.

(d) Any political party or body shall be entitled to nominate one candidate for the office of [A]t-[L]arge County Council Member. In the municipal election, each voter may vote for no more than one candidate for the office of [A]t-[L]arge Council Member and the two candidates receiving the highest number of votes shall be elected as the [A]t-[L]arge County Council Members.

(e) At the first election under this Charter and at four year intervals thereafter, the two [A]t-[L]arge County Council Members shall be elected.

Charter, § 1.3-305(d), (e).

The Administrative Code, in turn, addresses the filling of vacancies at Section 1.3-309, which provides in pertinent part:

(a) The offices of Chief Executive or County Council Member shall become vacant upon the officer's death, resignation or forfeiture of office, or upon the failure of the officer to assume office after election within 30 days after the scheduled commencement of the term.

(b) If a County Council seat becomes vacant, County Council shall appoint an interim County Council Member within 30 days. The interim County Council Member shall be qualified under this Charter to be elected to such office and shall have the same political party affiliation as the former County Council [m]ember, or in the case of aa seat held by a person of no political party affiliation, shall have no political party affiliation. **The interim County Council Member shall hold the vacated seat until the vacancy is filled at the next available municipal election. The person elected at the next available municipal election shall take office as soon as possible after the certification of the election and shall serve the unexpired portion of the vacated term.**

*Id.*, § 1.3-309 (a) & (b) (emphasis added).

11

### B. The Date of the "Next Available Election"

With this legal context in mind, we turn to Appellant's first assertion that the trial court erred in finding as a matter of statutory construction that the term "next available election" in Section 1.3-309 refers to the November 2025 Municipal Election rather than the 2027 Municipal Election. (Appellant's Br., at 16.) As authority, Appellant relies upon the language of Section 1.3-305 of the Charter, which he asserts must be read together with Section 1.3-309. Appellant argues that the trial court's opinion "requires County voters to elect an At-Large council member on a 'winner takes all basis' in violation of Section 1.3-305 of the [Charter]." (Appellant's Br., at 21-22.)

The BOE responds that the instant case falls squarely within the language of Section 1.3-309 of the Administrative Code which was adopted precisely to deal with the issue presented in this case, where a Council or Executive position has been vacated before the elected official has completed his or her term of office. The BOE argues that the applicability of the section to this case is clear and unambiguous. (Appellee's Br., at 19-22.)

In order to evaluate Appellant's argument that he is not required to run in the 2025 Municipal Election in order to retain his Council seat during the remainder of Councilman DeMarco's unexpired term of office, we, like the trial court, turn to the rules of statutory construction to evaluate the relevant language of the Charter and Administrative Code. We have previously held that general rules of statutory construction are applicable in interpreting provisions of a charter. *Eppihimer*, 835 A.2d at 887. In engaging in statutory interpretation, we have stated:

> We are guided in our analysis by the Statutory
> Construction Act of 1972 (Statutory Construction Act), 1
> Pa.C.S. §§ 1501-1991, which provides that the object of
> all statutory interpretation "is to ascertain and effectuate

the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." *Miller v. County of Center*, 173 A.3d 1162, 1168 (Pa. 2017). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pennsylvania Property and Casualty Insurance Guarantee Association*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa.C.S. § 1921(b)). . . . . When the statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act, 1 Pa.C.S. § 1921 (c) and other rules of statutory construction. *See Pennsylvania School Boards Association, Inc v. Public School Employees Retirement Board*, 863 A.2d 432, 436 (Pa. 2004) (observing that "other interpretative rules of statutory construction are to be utilized only where the statute at issue is ambiguous"). Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be constructed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). "We also presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.'" *Berner v. Montour Township Zoning Hearing Board*, 217 A.3d 238, 245 (Pa. 2019) (quoting 1 Pa.C.S. § 1922(1)-(2)).

*Ursinus College v. Prevailing Wage Appeals Board*, 310 A.3d 154, 171 (Pa. Cmwlth. 2024). In addition to the SCA, we also turn to the HRC Law, which provides guidance as to its construction. It states "[a]ll grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in

13

the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality." 53 Pa.C.S. § 2961. Accordingly, should we find ambiguity in the scope of municipal authority and limitations imposed thereupon, we must resolve that ambiguity in the home rule municipality's favor.

The gist of Appellant's argument is that this Court must look to the language of both Sections 1.3-309 and 1.3-305 to determine the meaning of the term "next available election." Appellant asserts that when the two provisions are read together, it becomes clear that in order for an election to be "available," there must be two At-Large representative positions on the ballot so that the top two vote recipients can be seated. We disagree.

When examined closely, the language of Section 1.3-309(b) of the Administrative Code, the only provision to address interim appointments, makes clear that the remainder of Councilman DeMarco's unexpired term is to be filled at the November 2025 Municipal Election. Here, the plain language of the provision states that "[t]he interim County Council Member shall hold the **vacated seat** until the **vacancy is filled** at the next available election." We note that in the 2027 Municipal Election, the winner of the At-Large Council seats will not be filling a "vacancy" but rather will be winning an entirely new term of office. Section 1.3-309 also states that "[t]he person **elected** at the next available municipal election shall . . . serve **the unexpired portion of the vacated term**." This provision makes clear that **Appellant**, **who was appointed,** is not entitled to serve out **the unexpired portion of the vacated term** because the Administrative Code reserves this term of service for the person elected to the position in the next available municipal election. (Section 1.3-309(b)) (emphasis added.)

Moreover, it is clear that Appellant's focus on Section 1.3-305 of the Charter leads Appellant to a conclusion that conflicts with our understanding of Section 1.3-309(b) of the Administrative Code. We are mindful that "[w]hen a

14

conflict between two provisions in a statute exists, the more specific provision trumps a more general provision[.]" *County of Fulton v. Secretary of Commonwealth*, 330 A.3d 481, 509 (Pa. Cmwlth. 2024); *see also* 1 Pa.C.S. § 1933 (stating rule of statutory construction that if there is irreconcilable conflict between provisions, the special provision prevails and must be construed as an exception to the general provision). In the case before us, it is clear both that Section 1.3-309 of the Administrative Code is the more specific provision and that the language of that provision makes clear that Appellant must run in the 2025 Municipal Election if he wishes to continue to hold his interim At-Large Council seat.[12]

### C. Appellant's Constitutional Claims

#### 1. Article VII, Section 6

Before this Court, Appellant again argues that the BOE's interpretation of the Charter, which the trial court affirmed, requiring him to run in the 2025 Municipal Election misinterprets the Charter and the Administrative Code because "the P[A] Constitution emphasizes the importance of uniformity in election and registration laws across the Commonwealth of Pennsylvania. (Appellant's Br.. at 37.) In support of his uniformity argument, Appellant quotes article VII, section 6 of the PA Constitution, which states: "[a]ll laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State." PA CONST. art. VII, § 6.

The trial court disagreed with this argument, finding that it "failed to take into consideration the fundamental differences that naturally exist between traditional county governments and those operating under home[ ]rule charters."

---

[12] Because we interpret the Charter and the Administrative Code to require Appellant to run in the November 2025 Municipal Election if he wishes to retain his At-Large Council seat, we need not address the BOE's argument that even if Appellant were entitled to retain his Council seat until the 2027 Municipal Election, as Appellant has waived his claim to retain his seat.

(Trial Ct. Op. at 19.) On this issue, we agree with the trial court that there will naturally be less uniformity between counties that choose to adopt home[ ]rule and those that remain under the original system. This lessening of uniformity is clearly sanctioned by both the 1968 constitutional revision allowing municipalities to adopt home rule charters and by the HRC Law.

Moreover, we note that article VII, section 6 does not apply to the situation before us because the words "laws regulating the holding of elections" or "for the registration of electors" do not refer to the procedures for the filling of vacancies in elective offices, but rather deal with the mechanics of holding an election. In fact, the case cited by Appellant in his brief, *Banfield v. Cortés*, 110 A.3d 155 (Pa. 2015), deals not with the filling of vacancies but rather with the use of electronic voting machines. Thus, like the trial court, we find Appellant's argument unpersuasive in light of the plain meaning of the words of the Administrative Code with respect to the method by which vacancies, such as the one for which Appellant holds an interim appointment, are to be filled.

## 2. Article VII, Section 3

Appellant cites article VII, section 3 of the Pennsylvania Constitution in support of his argument that "the lower [c]ourt's] interpretation of the statutory language will permit a known 'activist' to game the system, and destroy the drafter's efforts to preserve minority representation on [the] County Council." (Appellant's Br., at 37.) Appellant relies on the following language from article VII, section 3:

> All elections for . . . county, . . . officers, **for regular terms of service** shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year . . . .

PA. CONST. art. VII, § 3 (emphasis added). Appellant has failed to articulate how this constitutional provision, which requires that municipal elections be held on a

16

specific day of November in odd-numbered years, protects minority representation on the Council. As such, it has no merit and is waived. *See Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1998) (holding that failure to develop an issue in appellate brief results in waiver); *Browne v. Com. Of Pa., Department of Transportation*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver.").

### *D. Laches*

Finally, we agree with the trial court's finding regarding the BOE's laches argument that there was no prejudice to the BOE resulting from any alleged delay in filing Appellant's request for a declaratory judgment.

### IV. <u>Conclusion</u>

In sum, the language of the Charter and the Administrative Code make clear that if Appellant wishes to serve the unexpired term of Councilman DeMarco's At-Large Council seat, Appellant must run for election in the November 2025 Municipal Election. As our Supreme Court has stated, "a home[ ]rule municipality's exercise of legislative power is presumed valid, absent a specific constitutional or statutory limit . . . ." *SEPTA*, 101 A.3d at 88. Appellant has failed to demonstrate that the interpretations of the trial court and the BOE of the relevant Charter and Administrative Code language violates any constitutional or statutory limit. As such, we affirm the decision of the trial court.

_____
PATRICIA A. McCULLOUGH, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Embrescia, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 744 C.D. 2025 |
| | : | |
| Allegheny County Board | : | |
| of Elections and Alex Rose | : | |

## ***ORDER***

AND NOW, this 25th day of July, 2025, the June 5, 2025 Order of the Allegheny County Court of Common Pleas is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge